**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
IN RE: EMS FINANCIAL SERVICES, LLC,

                Debtor.
----------------------------------------------------------X
KENNETH KIRSCHENBAUM, as Trustee for
the Estate of EMS Financial Services, LLC,

                Plaintiff,

        -against-

FEDERAL INSURANCE COMPANY, WHITE LINES COM, LLC, BRUCE POLLAK and "JOHN DOE #1" through "JOHN DOE #10", defendants being unknown to Plaintiff, the parties intended being any party asserting a claim for coverage under Debtor's errors and omissions insurance policy (Policy Number 8223-2057) issued by Federal Insurance Company,

                Defendant.
----------------------------------------------------------X

**MEMORANDUM OF DECISION AND ORDER**
12-MC-524 (ADS)

FILED
CLERK
4/19/2013 12:07 pm
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**APPEARANCES:**

**Kirschenbaum & Kirschenbaum, P.C.**
*Attorneys for the Plaintiff*
200 Garden City Plaza
Garden City, NY 11530
        By:    Steven B. Sheinwald, Esq., Of Counsel

**Tressler LLP**
*Attorneys for the Defendant*
One Penn Plaza
Suite 4701
New York, NY 10119
        By:    Courtney Elizabeth Scott, Esq.
                   John Collen, Esq.
                   Mark D. Conzelmann, Esq., Of Counsel

**SPATT, District Judge**.

On March 6, 2012, the Debtor EMS Financial Services, LLC ("EMS") filed a voluntary petition for Chapter 7 bankruptcy in the United States Bankruptcy Court in the Eastern District of New York before United States Bankruptcy Judge Alan S. Trust. On May 30, 2012, the Plaintiff Kenneth Kirschenbaum, Esq., the Chapter 7 Trustee for EMS ("the Trustee"), filed an adversary proceeding against the Defendant Federal Insurance Company ("Federal"), seeking a declaration of the rights, duties, and liabilities of the parties under certain insurance policies. On August 7, 2012, Federal moved this Court to withdraw the adversary proceeding. Federal argues that this is a non-core proceeding that absent withdrawal, will require a costly and inefficient double trial because the bankruptcy court lacks constitutional authority to adjudicate the matter. For the reasons set forth below, Federal's motion to withdraw the reference is granted.

## I. BACKGROUND

### A. The Policy

On or about January 5, 2011, an insurance policy was issued to EMS by Federal under Policy Number 8223-2057 (the "Policy"). The Policy covered a one year period, from December 27, 2010 through December 27, 2011 (the "Policy Period"). The Policy was an errors and omissions policy, under which EMS and its officers, directors, and employees were insured for any loss resulting from a claim for wrongful acts committed by EMS or its agents. The Policy contained a $5 million cap on any single claim and on all aggregate claims.

### B. The Creditor Lawsuits

Prior to the filing of EMS's bankruptcy petition, litigation had been commenced against the Debtor by White Lines.Com LLC ("White Lines") and Bruce Pollak ("Pollak") (collectively, the "Creditors") in two separate proceedings: (1) White Lines.Com, LLC, Plaintiff v. EMS

Financial Services, LLC, et al., Defendants, in the Supreme Court of the State of New York, County of New York, Index Number 653221/2011; and (2) Bruce Pollak, Plaintiff, v. EMS Financial Services, LLC, Defendant, in the United States District Court for the Middle District of Pennsylvania, Case Number 11-cv-1969(YK) (collectively, the "Creditor Lawsuits"). In each of the Creditor Lawsuits, the Creditors assert that funds given to EMS were improperly used. At the time of the bankruptcy filing, both of the Creditors had filed motions for default judgment in their respective courts.

Subsequently, after the bankruptcy case began, the Creditors each filed a motion pursuant to 11 U.S.C. § 362, seeking an order to vacate the automatic stay so as to permit each of them to continue the prosecution of their respective lawsuits. The bankruptcy court lifted the automatic stay for the limited purpose of allowing the Creditors to adjudicate their respective motions for default judgment, and proceed to an inquest to determine the amount of their claims. On July 24, 2012, the District Court for the Middle District of Pennsylvania denied Pollak's motion for a default judgment, and on October 5, 2012, the Supreme Court of the State of New York denied White Line's motion for a default judgment. Thus, both the White Lines and Pollak lawsuits are currently stayed by the automatic stay in the instant bankruptcy case.

In addition to Creditor Lawsuits, the Creditors each filed a proof of claim in the bankruptcy court proceeding. White Lines filed a proof of claim against EMS on March 22, 2012 in the sum of $7,840,643.00, and Pollak filed a proof of claim against EMS on June 5, 2012 in the sum of $1,325,000.00. The aggregate amount of the proofs of claim filed by White Lines and Pollak total $9,165,643.

## C. Procedural History of the Bankruptcy Proceeding and the Adversary Proceeding

On or about May 30, 2012, the Trustee commenced an adversary proceeding against Federal (the "Adversary Proceeding"). The Trustee seeks (1) a determination that Federal is obligated to indemnify the Debtor for the damages being sought by the Creditors, and (2) a declaration that Federal shall turn over the full limits of liability under the Policy.

On August 6, 2012, in lieu of filing an Answer in the Bankruptcy Court, Federal filed with the bankruptcy court a motion to dismiss the Trustee's Complaint.

On August 7, 2012, Federal filed a motion in this Court to withdraw the Adversary Proceeding from the bankruptcy court. On October 1, 2012, the Trustee filed an opposition to the withdrawal, to which Federal replied on October 22, 2012.

Subsequently, on January 4, 2013, the bankruptcy court denied Federal's motion to dismiss the Trustee's Complaint.

## II. DISCUSSION

### A. Legal Standard

Under the provisions of 28 U.S.C. § 1334(a), the district courts are given original and exclusive jurisdiction of all cases under Title 11 of the United States Code, which concerns bankruptcy proceedings. Conversely, 28 U.S.C. § 1334(b) provides that when a civil proceeding arises under Title 11, or arises in or relates to a case under Title 11, "the district court[] shall have original but not exclusive jurisdiction." Pursuant to 28 U.S.C. § 157(a), a district court has the discretion to refer to the bankruptcy court "any or all cases under [T]itle 11 and any or all proceedings arising under [T]itle 11 or arising in or related to a case under [T]itle 11 . . . ."

In this regard, the Eastern District of New York has a Standing Order of Referral dated August 28, 1986 ("1986 Order"), which automatically refers to the Bankruptcy Court of the

Eastern District of New York all cases in the Eastern District arising under, or related to, a Title 11 bankruptcy case. However, recently, on December 5, 2012, a new Standing Order of Referral was issued in this District (the "2012 Order"). The 2012 Order continues the 1986 Order, but also provides as follows:

> [I]f a bankruptcy judge or district judge determines that a bankruptcy judge cannot enter a final order or judgment consistent with Article III of the United States Constitution in a particular proceeding referred under this order and designated as core under section 157(b) of [T]itle 28, unless the district court orders otherwise, the bankruptcy judge shall hear the proceeding and submit proposed findings of fact and conclusions of law to the district court[.] . . . [F]urther . . . the district court may treat any order or judgment of the bankruptcy court as proposed findings of fact and conclusions of law in the event that the district court concludes that a bankruptcy judge could not enter that order or judgment consistent with Article III of the United States Constitution.

28 U.S.C. § 157(d) provides for withdrawal of the reference of matters from the bankruptcy court to the district court in two circumstances. First, "[t]he district court may withdraw in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown." 28 U.S.C. § 157(d). This is considered a permissive withdrawal. Second, "[t]he district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both [T]itle 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." Id. This is considered a mandatory withdrawal.

In this case, the Adversary Proceeding at issue is not subject to mandatory withdrawal because its resolution will clearly not hinge on "substantial and material consideration of non-Bankruptcy Code federal statutes." In re Ionoshpere Clubs, Inc., 922 F.2d 984, 995 (2d Cir. 1990). Therefore, the Court will only consider whether permissive withdrawal is appropriate

5

here.  In this regard, the Court notes that district courts have "broad discretion to withdraw the reference for cause."  In re Enron Corp., 295 B.R. 21, 25 (S.D.N.Y. 2003) (internal citations omitted); see also In re Apponline.Com., 303 B.R. 723, 726 (E.D.N.Y. 2004).

"In determining whether a party has shown 'cause,' courts consider factors including 'whether the claim or proceeding is core or non-core, whether it is legal or equitable, and considerations of efficiency, prevention of forum shopping, and uniformity in the administration of bankruptcy law.'"  Murphy v. County of Chemung (In re Murphy), 482 F. App'x 624, 628 (2d Cir. 2012) (quoting In re Orion Pictures Corp., 4 F.3d 1095, 1101 (2d Cir. 1993)).  These factors are often referred to by others courts in this circuit as the "Orion factors" due to the Second Circuit's holding in In re Orion Pictures Corp., 4 F.3d at 1101.  The Court will consider each factor more thoroughly below.

### B. Whether The Adversary Proceeding is Core or Non-Core

The first factor that courts should consider when determining whether a party has shown cause to allow for withdrawal of the reference is whether a proceeding is core or non-core.  The distinction between a core proceeding and a non-core proceeding first arose in Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 102 S. Ct. 2858, 73 L. Ed. 2d 598 (1982) (hereinafter "Marathon").  In a plurality opinion, the Supreme Court held that a claim alleging breach of a pre-petition contract brought against a party that had not filed a proof of claim and was not otherwise related to the bankruptcy proceeding involved a state-created right that must be adjudicated by an Article III judge.  See also Bankruptcy Servs. v. Ernst & Young (In re CBI Holding Co.), 529 F.3d 432, 459 (2d Cir. 2008) ("In Marathon, the plurality opinion held that a non-Article III bankruptcy judge could not adjudicate a pre-petition contract dispute arising under state law against a party that had not filed a proof of claim and was not otherwise related

6

to the bankruptcy proceedings."). "In response to the Court's decision, Congress enacted 28 U.S.C. § 157, authorizing district courts to refer 'any or all cases under [T]itle 11 and any or all proceedings arising under [T]itle 11 or arising in or related to a case under [T]itle 11' to bankruptcy judges under subsection (a), and defining the reach of the bankruptcy court's power under subsections (b) and (c)." Bankruptcy Servs., 529 F.3d at 460; see also Connolly v. Bidermann Indus. U.S.A., 95 Civ. 1791 (RPP), 1996 U.S. Dist. LEXIS 8059, at *5–6 (S.D.N.Y. 1996) ("The Bankruptcy Amendments and Federal Judgeship Act of 1984 . . . was enacted in response to the Supreme Court's decision in [Marathon,]" and "allows the federal courts to refer bankruptcy cases automatically to the bankruptcy judges for the district, 28 U.S.C. § 157(a), but provides that in some situations the reference can be withdrawn.")

Under § 157(b)(1), a proceeding is considered "core" if it "arise[s] in a bankruptcy case or under Title 11. The detailed list of core proceedings in § 157(b)(2) provides courts with ready examples of such matters." Stern v. Marshall, 564 U.S. --; 131 S. Ct. 2594, 2605 (2011) (citing Marathon, 458 U.S. 50 71). The list, which is non-exhaustive, includes "matters concerning the administration of the [bankruptcy] estate"; "counterclaims by the [bankruptcy] estate against persons filing claims against the [bankruptcy] estate"; and "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims[.]" 28 U.S.C. § 157(b)(2). Conversely, under § 157(c)(1), non-core proceedings are those that are related to the bankruptcy case but do not arise under Title 11 and are typically based on common law. Stern, 131 S. Ct. at 2605.

Of importance, the bankruptcy court's authority to enter a final order depends in part on whether the issue or claim at hand is deemed a "core proceeding." U.S.C. 28 § 157. Under

§ 157(b)(1), bankruptcy courts "may hear and determine" all cases considered core proceedings. In contrast, while a bankruptcy court "may hear a proceeding that is not a core proceeding," it may only "submit proposed findings of fact and conclusions of law to the district court," which must review the bankruptcy court's findings before entering a final order or judgment. 28 U.S.C. § 157(c)(1).

However, recently, in Stern v. Marshall, the Supreme Court called into question the constitutionality of § 157(b) with respect to the statute's grant of authority to bankruptcy judges to enter final judgments in all core proceedings. In this regard, the Stern Court ruled that "a bankruptcy court does not have the constitutional authority to issue a final judgment on claims not necessarily determined as part of the process of allowing or disallowing proofs of claim." Picard v. Estate of Madoff, 464 B.R. 578, 585 (S.D.N.Y. 2011) (citing Stern, 131 S. Ct. at 2618). Thus, "[t]he [b]ankruptcy [c]ourt is constitutionally barred from finally adjudicating a claim, notwithstanding its designation as core, if '(1) the counterclaim would not be resolved by adjudication of the creditor's proof of claim; (2) the counterclaim was "not completely dependent upon adjudication of a claim created by federal law"; and (3) the creditor "did not truly consent" to resolution in bankruptcy court.'" In re Arbco Capital Management, LLP, 479 B.R. 254, 261 (S.D.N.Y. 2012) (citing Stern, 131 S. Ct. at 2608, 2614, 2617; Adelphia Recovery Trust v. FLP Group, Inc., 11 Civ. 6847 (PAC), 2012 U.S. Dist. LEXIS 10804, at *6 (S.D.N.Y. Jan. 30, 2012)).

However, if the parties consent, if the claim involves public rights, or if the claim will be resolved by ruling on the proof of claim, the bankruptcy court will have constitutional authority over the claim. Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP, 462 B.R. 457, 467 (S.D.N.Y. 2011) ("[A]fter Stern, th[e] power [of the [b]ankruptcy [c]ourt to enter final

8

adjudications] depends, not on whether the matters are core or non-core, but on whether the rights being adjudicated (1) are public rights, or (2) will necessarily be resolved in ruling on a creditor's proof of claim – or, of course, on the parties unanimously consenting to bankruptcy court adjudication.").

Nevertheless, the Second Circuit has emphasized that the Supreme Court's holding in Stern is "a narrow one." In re Quigley Co., Inc., 676 F.3d 45, 52 (2d Cir. 2012) (citing Stern, 131 S. Ct. at 2620 ("We conclude today that Congress, in one isolated respect, exceeded [Article III's] limitation in the Bankruptcy Act of 1984.")); see also In re Salander O'Reilly Galleries, 453 B.R. 106, 115 (Bankr. S.D.N.Y. 2011) ("Stern is replete with language emphasizing that the ruling should be limited to the unique circumstances of that case."). Furthermore, with respect to motions to withdraw the reference, district courts within this Circuit have interpreted the effect of Stern in varying ways. Dynegy Danskammer, L.L.C. v. Peabody COALTRADE Int'l Ltd., Case No. 12-CV-5859 (KMK), 2012 U.S. Dist. LEXIS 161401, at *6 (S.D.N.Y. Nov. 7, 2012).

One approach replaces the previously most significant Orion factor—whether the adversary proceeding at issue is core or non-core—with consideration of "whether the bankruptcy court has constitutional authority to finally adjudicate the matter under [the three part test in] Stern." Id. at *3 (citing Arbco v. O'Connell, 479 B.R. 254, 262 (S.D.N.Y. 2012); Lyondell v. Blavatnik, 467 B.R. 712, 719 (S.D.N.Y. 2012); In re Levine, 11 Civ. 9101 (PAE), Chapter 7, Case No. 00-15511 (SCC),Adv. Pro. 02-3492 (SCC), 2012 U.S. Dist. LEXIS 12292, at *7–8 (S.D.N.Y. Feb. 1, 2012); Akin Gump, 462 B.R. at 471–72; Picard v. Avellino, 469 B.R. 408, 413 n.3 (S.D.N.Y. 2012)). A second method simply adds the Stern three-step approach to the Orion factors as a separate inquiry. Id. at *3 (citing Adelphia Recovery Trust v. FLP Group, Inc., 11 Civ. 6847 (PAC), 2012 U.S. Dist. LEXIS 10804, at *7 (S.D.N.Y. Jan. 30, 2012); In re

9

Madison Bentley Assocs., LLC, 474 B.R. 430, 435 (S.D.N.Y. 2012)). Lastly, a third approach essentially ignores the implications of Stern and leaves the Orion factors unadulterated. Id. (citing Extended Stay, Inc. v. Blackstone Grp., 466 B.R 188, 204 (S.D.N.Y. 2011); Dev. Specialists, Inc. v. Peabody Energy Corp. (In re Coudert Bros. LLP), 11 Civ. 4949 (PAE), 2011 U.S. Dist. LEXIS 135990, at *7–9 (S.D.N.Y. Nov. 23, 2011) (hereinafter "Coudert Bros.")); see also DeWitt Rehabilitation and Nursing Center, Inc. v. Columbia Cas. Co., 464 B.R. 587, 594 (S.D.N.Y. 2012).

However, this Court need not resolve the best way to apply Stern to a motion to withdraw the reference, because the Adversary Proceeding at issue here is a non-core proceeding. While, as discussed above, "core proceedings are not statutorily defined," district courts have found that "[a] proceeding that involves rights created by bankruptcy law, or that could arise only in a bankruptcy case, [to be] a core proceeding." DeWitt Rehab. & Nursing Ctr., Inc. v. Columbia Cas. Co., 464 B.R. 587, 591 (S.D.N.Y. 2012) (citing MBNA America Bank, N.A. v. Hill, 436 F.3d 104, 108–109 (2d Cir. 2006); McCrory Corp. v. 99¢ Only Stores (In re McCrory Corp.), 160 B.R. 502, 506 (S.D.N.Y. 1993)). On the other hand, "[a] claim is non-core if it 'does not depend on bankruptcy laws for its existence and . . . could proceed in a court that lacks federal bankruptcy jurisdiction.'" Id. (citing N. Am. Energy Conservation, Inc. v. Interstate Energy Res., Inc., 00-CV-4302 (SHS), 2000 U.S. Dist. LEXIS 15084, at *2 (S.D.N.Y. Oct. 10, 2000)).

In this case, the Adversary Proceeding concerns a dispute over coverage under an insurance contract that was entered into prior to EMS filing its bankruptcy petition. The Trustee seeks coverage from Federal on behalf of EMS for EMS's potential liability in the Creditor Actions. Therefore, rather than relying on bankruptcy laws for its existence, those claims are state common law contract claims that could proceed in a court without federal bankruptcy

10

jurisdiction. As such, the Court finds that the Adversary Proceeding at issue is a non-core matter.

Notably, this Adversary Proceeding does not contain a breach of contract cause of action. Nevertheless, the declaratory claim is merely a breach of contract damages claim in very thin disguise, in that there is an implicit claim for money damages. See United Nat. Ins. Co. v. R&D Latex Corp., 242 F.3d 1102, 1114 (9th Cir. 2001). Thus, of importance, the Second Circuit has held that a "breach-of-contract action by a debtor against a party to a pre-petition contract, who has filed no claim with the bankruptcy court, is non-core." Orion, 4 F.3d at 1102. In reaching this holding, the Second Circuit emphasized that while "[a]ny contract action that the debtor would pursue against a defendant presumably would be expected to inure to the benefit of the debtor estate and thus 'concerns' its administration," such an action nevertheless "remains a pre-petition contract action that the Supreme Court held in Marathon may not be finally adjudicated by a non-Article III judge." Id.

Indeed, "while the debtor's rights under its insurance policies are property of a debtor's estate, the contract claims are not rendered core simply because they involve property of the estate. . . . A general rule that such proceedings are core because they involve property of the estate would create an exception to Marathon that would swallow the rule." United States Lines, Inc. v. American S.S. Owners Mut. Protection & Indem. Ass'n (In re United States Lines, Inc.), 197 F.3d 631, 637 (2d Cir. 1999) (citation and internal quotation marks and alterations omitted). Furthermore, "a dispute arising from a pre-petition contract will usually not be rendered core simply because the cause of action could only arise post-petition." Id. at 638.

Particularly instructive in this case is the district court's decision in DeWitt Rehabilitation and Nursing Center, Inc. v. Columbia Cas. Co., 464 B.R. at 587. In DeWitt, a negligence action

11

was filed against the debtor, a rehabilitation and nursing center, in New York County Supreme Court. Id. at 589. The negligence action involved the alleged fall of a resident/patient at the debtor's nursing home. Id. However, since the debtor had filed for Chapter 11 bankruptcy, the negligence action was stayed. Id. Thereafter, the debtor "initiated an adversary proceeding in the bankruptcy court against its past liability carrier [], its present liability carrier [], and the successor of its insurance agent at the time of the fall." Id. The debtor sought a "declaratory judgment as to who should indemnify [the debtor] from the [negligence action]." Id.

The district court in DeWitt was not persuaded by the debtor's attempts to characterize its cause of action as a core proceeding. In this regard, the district court held:

> The parties' dispute is a non-core matter. [The debtor's] assertion that the adjudication is directly related to the claim of a creditor . . . is irrelevant to this determination. This case does not involve the question of whether the [plaintiff in the negligence action] has a valid claim against [the debtor]; that will be determined in the [negligence] action, presently stayed. This case determines who bears financial responsibility for any potential award arising from the [negligence] action. This requires a straightforward analysis of [the debtor's] contracts with [its past liability carrier, its present liability carrier and the successor of its insurance agent at the time of the subject fall], and basic factfinding as to the timing and adequacy of various claim notices. Such inquiries and analyses are not recited in section 157(b)(2), involve rights that exist independent of [the debtor's] bankruptcy, and could easily have arisen outside of a bankruptcy court.
> The Court is not persuaded by [the debtor's] attempts to cast this action as inherently related to the bankruptcy proceeding. While it is true that . . . the declaratory judgment action is brought in the context of [a d]ebtor attempting to secure a valuable asset (specifically the coverage of the [liability] Policy), this does not make it a bankruptcy-related action.

Id. at 590–91 (citation and internal quotation marks omitted).

This Court finds the reasoning of the court in DeWitt to be applicable here. As in DeWitt, the Trustee, on behalf of EMS, is essentially seeking indemnification from Federal for

12

EMS's potential liability stemming from the Creditor Actions. The dispute concerns a "straightforward analysis" of the Policy and "basic factfinding" as to whether coverage is provided under the Policy for the Creditor Actions. DeWitt, 464 B.R. at 591. As discussed above, the Supreme Court has held, and the Second Circuit has recognized, that under Article III of the Constitution, such claims cannot be finally adjudicated by a bankruptcy judge. Therefore, the Court finds that the contract dispute at the center of the Adversary Proceeding makes this a non-core matter.

However, "[w]hile the non-core nature of [the Trustee's] claims weighs in favor of withdrawing the reference from the bankruptcy court, the core/non-core determination does not end the inquiry. As the Second Circuit directed in Orion, 'once a district court makes the core/non-core determination, it should weigh questions of efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors.'" DeWitt, 464 B.R. at 591 (citing Orion, 4 F.3d at 1101). Indeed, the Trustee appears to implicitly concede that the Adversary Proceeding is a non-core proceeding and instead urges the Court to consider the remaining Orion factors. Therefore, the Court now considers these additional factors.

C. **Demand for a Jury Trial and the Nature of the Trustee's Claims**

First, although a movant's demand for a jury trial can be highly relevant, the Court notes that a jury trial is not demanded here by Federal. For that reason, the Court will not consider this factor as weighing in favor of finding the existence of cause to withdraw the reference in this case.

Second, with regard to the nature of the Trustee's claims, although the Trustee seeks a declaratory judgment, the Supreme Court has held "[t]he fact that [an] action is in form a

13

declaratory judgment case should not obscure the essentially legal nature of the action." Orion, 4 F.3d at 1103 (quoting Simler v. Conner, 372 U.S. 221, 223, 9 L. Ed. 2d 691, 83 S. Ct. 609 (1963) (per curiam)).  In its prayer for relief, the Trustee requests an order directing that funds representing the maximum limit of liability under the Policy be turned over to the Trustee for distribution.  Thus, the Trustee is essentially seeking monetary damages on behalf of EMS, in that he seeks coverage for EMS under the Policy for EMS's liability in the Creditor Actions. Where a claim seeks monetary damages, such a claim "is a legal, rather than an equitable, claim."  N. Am. Energy Conservation, Inc. v. Interstate Energy Res., Inc. (In re N. Am. Energy Conservation, Inc.), 00 Civ. 4302 (SHS), 2000 U.S. Dist. LEXIS 15084, at *7 (S.D.N.Y. Oct. 10, 2000) (citing Dairy Queen, Inc. v. Wood, 369 U.S. 469, 477, 8 L. Ed. 2d 44, 82 S. Ct. 894 (1962); Merex A.G. v. Fairchild Weston Sys., Inc., 29 F.3d 821, 825 (2d Cir. 1994)).

Accordingly, the Court finds that because the underlying nature of the claims is legal, not equitable, this leads the Court to find that Federal's motion to withdraw the reference should be granted.  See Petition of Rosenman & Colin, 850 F.2d 57, 60 (2d Cir. 1988) (explaining that although "declaratory judgment actions are inherently neither equitable nor legal," it is "the nature of the underlying dispute" that is relevant).

### D. The Remaining Factors

In light of the Court's findings that this is a non-core matter, the Court finds that the remaining Orion factors weigh in favor of withdrawing the reference in this case.  As discussed above, "in evaluating cause," district courts should consider "efficiency, prevention of forum shopping and uniformity in the administration of bankruptcy law." Orion, 4 F.3d at 1101.  Here, if the motion to withdraw the reference is not granted, this Court will still be required to review *de novo* any findings made by the bankruptcy court regarding the Adversary Proceeding.  As a

14

result, the Court finds that judicial resources will be better served if this Court grants Federal's motion to withdraw the reference and oversees the entire litigation of this matter. See DeWitt, 464 B.R. at 593 ("Such duplicate reviews of the contracts and facts are costly and time-consuming, and unnecessarily expend judicial resources."); Coudert Bros., 2011 U.S. Dist. LEXIS, at *18 ("Because this case involves non-core claims, it will, almost unavoidably, reach this Court at some point.").

Furthermore, the Court finds that the resolution of this matter does not require familiarity with the Bankruptcy Proceeding or bankruptcy law. Rather, the claims related to the Policy involve issues of state contract and insurance law wholly separate from EMS's Bankruptcy Proceeding. See Dewitt, 464 B.R. at 593 ("Regarding uniformity of bankruptcy administration . . . [r]esolution of the present action will at best increase [the debtor's] assets, and at worst declare them unchanged, but in any event is unlikely to affect other creditor claims, as the contractual and factual issues are unique to [the fall at issue in the negligence action]."); Coudert Bros., 2011 U.S. Dist. LEXIS, at *18–19 (finding (1) that while the bankruptcy judge was "deeply familiar with the facts of [the debtor's] bankruptcy proceedings," the adversary proceeding was "*sui generis*," or unique in its characteristics, because, among other things, "it will turn, significantly if not entirely, on the interpretation of a single contract . . . " and (2) since "the claims . . . do not raise substantive issues of bankruptcy law[,] [m]aintaining the reference is . . . not necessary to promote the uniform application of the law").

Finally, the Court notes that the issue of forum shopping is not present in this case. Coudert Bros., 2011 U.S. Dist. LEXIS at *19 ("[T]here is no evidence that [the defendant's motion to withdraw the reference] is an attempt to engage in forum shopping. Quite the contrary: . . . Indeed, given that the claims at issue are all non-core, this case involves a non-core

proceeding that could have and probably should have been brought in a district court originally.") (citations and internal quotation marks omitted).

Accordingly, for all the reasons set forth above, the Court grants Federal's motion to withdraw the reference.

**E.  The Bankruptcy Court Order**

One final matter that must be addressed is the bankruptcy court's relatively recent and thorough decision on January 4, 2013, which denied Federal's motion to dismiss the adversary proceeding.  Judge Alan S. Trust denied Federal's Rule 12(b)(1) motion seeking: (1) dismissal of the adversary proceeding on the ground that the dispute among the parties was not ripe or justiciable; and (2) disallowance of the proofs of claims filed by the Creditors.  He found that the Court had subject matter jurisdiction to hear the adversary proceeding.

However, Federal did not assert before the bankruptcy court that that court lacked statutory jurisdiction or constitutional authority under Stern v. Marshall to hear and determine the dispute.  Rather, the issue presented to the bankruptcy court was whether it lacked subject matter jurisdiction to hear the adversary proceeding under the doctrine of ripeness.  (See Order dated Jan. 4, 2013, Case No. 8-12-08221-ast, at 8.)  Nevertheless, the bankruptcy court considered two threshold questions not briefed by the parties, namely: (1) whether the Policy was the property of the bankruptcy estate, and (2) whether the proceeds of the Policy were property of the estate.  Judge Trust stated that if neither the Policy nor the proceeds were property of EMS's estate, there could be no justiciable controversy for the bankruptcy court to adjudicate.  Thus, while the bankruptcy court did not expressly address the core/non-core distinction and whether it would have final adjudicative authority over the adversary proceeding, in exploring whether the Policy and/or the proceeds of the Policy were property of the estate, the

16

bankruptcy court may have implicitly made the finding that the proceeding was core under 28 U.S.C. § 1557(b).

Nevertheless, the bankruptcy court's express holding—an acknowledgement that it had subject matter jurisdiction over the adversary proceeding so that it had the authority to hear the matter—is not determinative as to whether the bankruptcy court could exercise final adjudicative authority over the case. See In re Quigley Co., Inc., 676 F.3d 45, 52 (2d Cir. 2012) (discussing Article III and the proper role of a bankruptcy court under the dictates of Stern, then subsequently discussing "[s]tatutory jurisdiction . . . a separate matter"). In any event, even if the bankruptcy court did make a conclusive finding that the adversary proceeding at issue was "core", this conclusion would not bind this Court. A relatively recent case from the Southern District of New York entitled In re Enron Creditors Recovery Corp. has intelligently elaborated on this point:

> [There is an] impracticality of the view that the Bankruptcy Court's determination of the core/non-core issue is binding on a district court later deciding whether to review the reference.
>
> Moreover, the argument that the District Court should be "bound" by an unappealed ruling of the Bankruptcy Court on the core/non-core issue rests on questionable logic. In addressing the potential withdrawal of the reference, the question whether the matter before the Bankruptcy Court concerns core bankruptcy functions will normally be of considerable importance, because (for a variety of reasons discussed below) the reference is more likely to be withdrawn where the proceeding is not a core bankruptcy matter. In considering the question in this context, the District Court does not engage in appellate "review" of any determination of the Bankruptcy Court; it simply addresses a legal issue relevant to its own exercise of discretion with respect to the division of labor between the District Court and its bankruptcy subdivision. Nor can the Court be "bound," in some *res judicata* sense, by an interlocutory ruling of a court that is, in the end, simply an arm of the District Court itself. [A core/non-core ruling by the Bankruptcy Court] does not finally determine any rights of the parties. It simply represents the Bankruptcy Court's views of

17

> an issue that was necessary for it to address in determining how to proceed with the case. That ruling is entitled to considerable respect and deference as the view of a Court with greater specialized expertise in bankruptcy matters than this Court enjoys. It cannot, however, prevent this Court from undertaking its own analysis of the legal issues relevant to how it should exercise its own power to decide whether to withdraw the reference of the matter to the Bankruptcy Court that is itself simply a discretionary order of the District Court with reference to the division of its own business.

In re Enron Creditors Recovery Corp., 410 B.R. 374, 380 (S.D.N.Y. 2008). See In re Appalachian Fuels, LLC, 472 B.R. 731, 744 (E.D. Ky. 2012) ("Despite the stipulation filed by the Bankruptcy Court [designating the numerous claims against each Defendant as either core or non-core], in deciding whether to withdraw the reference, this Court is not bound by the Bankruptcy Court's determination of the core/non-core issues.").

Although certain authorities have strayed in the opposite direction, see, e.g., Horwitz v. Sheldon (In re Donald Sheldon & Co., Inc.), No. 92 Civ. 6834, 1992 WL 396885, at *2 (S.D.N.Y. Dec. 17, 1992); Lesser v. A–Z Assocs. (In re Lion Capital Group), 63 B.R. 199, 209 (S.D.N.Y. 1985), the Court adopts the reasoning of Enron and others that have followed that rationale. See e.g., Bianco v. Hoehn (In re Gaston & Snow), 173 B.R. 302, 306 (S.D.N.Y. 1994); Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.), 4 F.3d 1095, 1102 (2d Cir. 1993).

Therefore, while the decision of the bankruptcy court is entitled to and is properly given considerable respect and deference, the Court nevertheless finds that withdrawal is proper in the instant action.

### III.  CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED,** that Federal's motion to withdraw the reference is granted; and it is further

**ORDERED**, that the Clerk of Court is directed to assign a civil action number and assign a magistrate judge to handle all discovery proceedings, and it is further

**ORDERED,** that the Clerk of Court is directed to docket all previously filed docket entries in Case No. 12-MC-524 onto the civil docket.

**SO ORDERED.**

Dated: Central Islip, New York
April 19, 2013

>　　　_/s/ Arthur D. Spatt_
>　　　ARTHUR D. SPATT
>　　　United States District Judge